IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | CIVIL ACTION |
| EARL HENNING, | : | |
| | : | |
| Plaintiff, | : | NO. 09-4282 |
| | : | |
| v. | : | |
| | : | |
| SUAREZ CORPORATION INDUSTRIES, | : | |
| INC. (Improperly pled as BIOTEC | : | |
| RESEARCH) | : | |
| | : | |
| Defendant. | : | |

## OPINION AND ORDER

**Slomsky, J.**                                                          **May 4, 2010**

## I.  INTRODUCTION

Before the Court is Defendant's Motion to Dismiss the Complaint Due to Improper

Venue or, in the Alternative, to Transfer Venue to the United States District Court for the Middle

District of Pennsylvania.  (Doc. No. 4).   On August 21, 2009, Plaintiff commenced this action in

the Philadelphia Court of Common Pleas, alleging product liability claims against Defendant for

injuries sustained while using a portable heater purchased from Defendant.  (Not. Of Removal,

Doc. No. 1, Pl.Compl., Ex. A, at 3-4 (hereinafter "Doc. No. 1-A")).  In the Complaint, Plaintiff

alleges that his injuries were caused by Defendant's negligence and carelessness, and that

Defendant's actions constitute a breach of warranty and a violation of the Restatement of Torts

(Second) § 402A & B.   (Id., at 4)

On September 19, 2009, Defendant removed this action to this Court on the basis of

diversity of citizenship jurisdiction.  (Doc. No. 1).  On October 14, 2009, Defendant filed the

instant Motion to Dismiss or Transfer, and a Brief in Support of the Motion (hereinafter "Doc. No. 4").  On October 27, 2009, Plaintiff filed a Brief Contra Defendant's Motion to Dismiss or in the Alternative to Transfer Venue (hereinafter "Doc. No. 6").  On November 3, 2009, Defendant filed a Reply Brief in Further Support of Motion (hereinafter "Doc. No. 7") with exhibits (Doc. No. 8 and 9).

On November 6, 2009, this Court entered an order permitting jurisdictional discovery. (Doc. No. 11).  After four months of discovery, on March 1, 2010, Plaintiff filed a Supplemental Brief Contra Defendant Suarez Corporation's Motion to Dismiss/Transfer Venue (Doc. No. 19). On March 15, 2010, Defendant filed a Supplemental Brief in Further Support of Motion (Doc. No. 20) with exhibits (Doc. No. 21 & 22).

In the instant Motion, Defendant asserts that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) due to improper venue or, in the alternative, the case should be transferred pursuant to 28 U.S.C. § 1406(a) to the Middle District of Pennsylvania where venue would be proper.  For the following reasons, the Court is persuaded that venue is not proper in the Eastern District of Pennsylvania (hereinafter "EDPA") and will transfer the action pursuant to 28 U.S.C. § 1406(a) to the Middle District of Pennsylvania.

## II.  SUMMARY OF THE FACTS

On January 29, 2009, Plaintiff was seated for several hours in a recliner chair in his home in White Haven, Pennsylvania, with his feet elevated near an EdenPURE Model 1000 Quartz Infrared Portable Heater.  (Doc. No. 1-A, at 3-4).  Plaintiff alleges that he suffered severe burns on his right foot and toes as a result of exposure to the heat generated by Defendant's defective heater.  (Id.) Plaintiff purchased the heater from Defendant by telephone after viewing Defendant's internet

advertising. (Id.; Doc. No. 6, at 2) Plaintiff had the heater shipped to his home in White Haven, which is located in Luzerne County, in the Middle District of Pennsylvania. (Doc. No. 1-A, at 3)

Defendant is an Ohio corporation with its principal place of business in Ohio. (Doc. No. 6, at 2). Defendant sells a variety of products through its websites and through authorized sales centers around the country. (Id. at 3). Consumers can also purchase Defendant's products by calling "800 numbers" listed in its television, radio, internet and print advertising. (Doc. No. 19, at 4). Defendant advertises its products on the internet, on television and radio and in the print media. (Id.)

In ruling on the instant Motion, the Court must examine Defendant's contacts with the EDPA, as revealed in the parties' jurisdictional discovery.[1] Defendant has shipped over $13 million worth of merchandise to customers within the EDPA over the past three years, which represents 1.7% of Defendant's total sales over that period. (Doc. No. 19, Ex. A, at 6 (hereinafter "Doc. No. 19-A")). Less than two tenths of one percent (0.19%) of these sales to customers in the EDPA were processed over the internet. (Id. at 10). Defendant ships products into the EDPA "daily or on an as needed basis." (Id. at 13). Defendant has authorized 66 independent distributors to sell its products in the EDPA, but does not have data on the gross dollar amount of sales generated by distributors in the EDPA. (Id. at 11-12). Defendant estimates that in the last three years it has received 56,321 telephone calls to its 800 numbers from phones located in the EDPA, and that it has experienced between 23,978 and 181,815 hits to its website(s) from computers located in the EDPA. (Id., at 8). Defendant has also mailed over 1.5 million advertising brochures to customers in the EDPA in the

---

[1] The only allegation contained in Plaintiff's pleadings relating to Defendant's contacts with the EDPA is Plaintiff's allegation that "Defendant. . . regularly does business by shipping and selling its products in Philadelphia, PA." (Doc. No. 1-A, at 3, ¶ 2). Accordingly, upon Plaintiff's request and as discussed infra, at note 2, the Court permitted the parties to engage in jurisdictional discovery.

last three years.  (Id. at 9).

Defendant has spent over $19 million advertising in national print media distributed in the EDPA,  over $400,000 advertising in local newspapers distributed in the EDPA., and over  $625,000 on national radio advertising which may have been broadcast over one or more radio stations whose signals could have been received within the EDPA.  (Id., at 7, 22, 24).  Defendant volunteered that it spent about $50,000 producing a 28.5 minute infomercial that aired on NBC affiliate WCAU in Philadelphia on November 8, 2009, but has not disclosed the amount spent on airing the infomercial.  (Id. at 28-29).  Plaintiff did not inquire whether the infomercial was made specifically for the EDPA market or whether it was made as part of a national advertising campaign targeting other markets.

Defendant estimates that 2.4% of its national print advertising dollars and 3.7% of its national television advertising dollars are spent in the EDPA, and that less than $750,000 was spent on television and print advertising in the EDPA  over the last three years.  (Id. at 16).  Defendant's print and television advertising in the EDPA is intended to solicit business in the EDPA. (Doc. No. 19, Ex. B, at 6-7 (hereinafter "Doc. No. 19-B")).  Defendant solicits business in the EDPA on a daily basis on the internet and on a monthly basis through television and print media advertising.  (Id.)

## III.  MOTION TO DISMISS FOR IMPROPER VENUE STANDARD

Federal Rule of Civil Procedure 12(b)(3) provides that a motion to dismiss may be made on the basis of improper venue.  In the Third Circuit, the burden of demonstrating improper venue is placed on the defendant.  Manning v. Flannery, 2010 U.S. Dist. LEXIS 1091, *9 (E.D. Pa. 2010). In considering a motion to dismiss for improper venue, the court must generally accept as true the allegations in the pleadings, and must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor.  Id. at *9-10; see Myers v. Am. Dental Assoc., 695 F.2d 716, 724-25 (3d Cir.

1982) (establishing that the burden of proof of venue is on the defendant); <u>Fellner ex. rel. Estate of</u> <u>Fellner v. Philadelpia Toboggan Coasters, Inc.</u>, 2005 U.S. Dist. LEXIS 23839, *4 (E.D. Pa. 2005) (citing <u>Myers</u>). The parties may submit affidavits in support of their positions, and may stipulate as to certain facts. <u>Manning</u>, 2010 U.S. Dist. LEXIS 1091, at *10 (citing <u>Heft v. AAI Corp.</u>, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005)); <u>Fellner</u>, 2005 U.S. Dist. LEXIS 23839, at *4 ("The court may examine facts outside the complaint to determine proper venue.").[2] However, even when the court considers affidavits and other evidence outside the pleadings, "the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge," and the court must still resolve all factual conflicts and draw all reasonable inferences in the plaintiff's favor. <u>Manning</u>, 2010 U.S. Dist. LEXIS 1091, at *10 (citing <u>Heft v. AAI Corp.</u>, 355 F. Supp. 2d at 762; <u>ProModel Corp. v. Pierce</u> <u>Story</u>, 2007 U.S. Dist. LEXIS 85567, *1 (E.D. Pa. 2007)).

## IV. DISCUSSION

### A. Venue

Title 28 U.S.C. § 1406(a) provides that, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss or, if it be in the interest of justice,

---

[2] The Court allowed the parties to engage in jurisdictional discovery, and will consider the evidence procured through discovery in the light most favorable to Plaintiff. Because the inquiry regarding proper venue, as explained below, can essentially be reduced to the question of whether the Eastern District of Pennsylvania can exert personal jurisdiction over Defendant, the Court was guided by Third Circuit case law providing that "courts are to assist the plaintiff by allowing jurisdictional discovery" in personal jurisdiction inquiries, "unless the plaintiff's claim is clearly frivolous." <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 456 (3d Cir. 2003) (internal quotation marks and citation omitted). If a plaintiff presents factual allegations suggesting "with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." <u>Id.</u> (internal quotation marks and citation omitted). Plaintiff requested leave to engage in jurisdictional discovery, (Doc. No. 6, at 7), and made a threshold showing of possible contacts with reasonable particularity.

transfer such case to any district, or division in which it could have been brought."  To determine

proper venue, the Court must look to the relevant venue statute.  Because this case is premised on

diversity jurisdiction, the relevant statute is 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of
> citizenship may, except as otherwise provided by law, be brought
> only in (1) a judicial district where any defendant resides, if all
> defendants reside in the same State, (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the
> action is situated, or (3) a judicial district in which any defendant is
> subject to personal jurisdiction at the time the action is commenced,
> if there is no district in which the action may otherwise be brought.

Plaintiff concedes that a substantial part of the events giving rise to the claim did not occur in the

EDPA.  (Doc. No. 6, at 5-6 (citing only to 28 U.S.C. § 1391(a)(1) as a basis for venue)).  Rather,

Plaintiff and Defendant agree that the events occurred in the Middle District of Pennsylvania.

(Id.; Doc. No. 4, at 5).  Accordingly, § 1391(a)(2) cannot serve as a basis for venue in the EDPA,

but does serve as a basis for venue in the Middle District of Pennsylvania.  Moreover, since there

is a district in which the action may otherwise be brought, § 1391(a)(3) does not apply in this

case.

Therefore, in order for the EDPA to be a proper venue, the Court must find that

Defendant "resides" in this district as required by § 1391(a)(1).  "Residence," for purposes of

venue of a corporate defendant, is defined in 28 U.S.C. § 1391(c) as follows:

> For purposes of venue under this chapter, a defendant that is a
> corporation shall be deemed to reside in any judicial district in
> which it is subject to personal jurisdiction at the time the action is
> commenced.  In a State which has more than one judicial district
> and in which a defendant that is a corporation is subject to personal
> jurisdiction at the time an action is commenced, such corporation

shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

The inquiry here thus turns on whether Defendant is subject to personal jurisdiction in the EDPA.

**B. Personal Jurisdiction**

A federal court exercises personal jurisdiction over non-resident defendants to the extent permitted under state law. Molnlycke Health Care AB v. Dumex Medical Surgical Products Ltd., 64 F. Supp. 2d 448, 450 (E.D. Pa. 1999) (hereinafter "Molnlycke"); see O'Connor v. Sandy Lane Hotel Co. Ltd., 496 F.3d 312, 316 (3d Cir. 2007) ("a District Court typically exercises personal jurisdiction according to the law of the state where it sits"). Pennsylvania's long-arm statute authorizes personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." Davis v. PNGI Charles Town Gaming, LLC, 2007 U.S. Dist. LEXIS 94381, *4 (E.D. Pa. 2007) (citing 42 Pa. Cons. Stat. Ann. § 5322(b)); Molnlycke, 64 F. Supp. 2d at 450. Accordingly, the Court must examine whether the exercise of personal jurisdiction conforms with the due process clause of the Fourteenth Amendment of the United States Constitution, which requires that a non-resident defendant "have certain contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Brown v. AST Sports Science Inc., 2002 U.S. Dist. LEXIS 12294, *8 (E.D. Pa. 2002) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The due process standard gives rise to two kinds of personal jurisdiction: specific jurisdiction, which "exists when a claim arises from or relates to conduct purposely directed at

the forum state;" and general jurisdiction, which "'exists when a defendant has maintained systematic and continuous contacts with the forum state.'" <u>Manning</u>, 2010 U.S. Dist. LEXIS 1091, at \*15 (citing <u>Marten v. Godwin</u>, 499 F.3d 290, 297 (3d Cir. 2007)).  Most importantly, in the case of general jurisdiction, the claim need not arise from the defendant's contacts with the forum.  <u>Id</u>. Since Plaintiff does not assert Defendant is subject to specific jurisdiction in the EDPA, (Doc. No. 19, at 6, n.1), the inquiry focuses on whether Defendant's contacts with the EDPA are sufficient to subject it to general personal jurisdiction in the district.

## C.  General Personal Jurisdiction

"General jurisdiction depends on a defendant having maintained 'continuous and systematic' contacts with the forum state."  <u>D'Jamoos ex rel Weingeroff v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 107 (3d Cir. 2009) (citing <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 415-16 (1984)).  The level of defendant's activity in the forum state required to allow the assertion of general jurisdiction must be "significantly more than mere minimum contacts," <u>Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir. 1987) (hereinafter "<u>Provident Nat'l</u>"), and must be "extensive and pervasive," <u>Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Engass</u>, 675 F.2d 587, 589 (3d Cir. 1982).  This standard requires the defendant's contacts with the forum to be "perpetual [and] abiding."  <u>In re: Chocolate Confectionary Antitrust Litigation</u>, 641 F. Supp. 2d 367, 384 (M.D. Pa. 2009) (hereinafter "<u>In re: Chocolate</u>").  "In short, this higher threshold demands contacts with the forum which approximate physical presence."  <u>Manning</u>, 2010 U.S. Dist. LEXIS 1091, at \*16-17 (internal citation and quotation marks omitted).

In evaluating a defendant's contacts with the forum, "a court should not necessarily focus on the percentage of income that a corporation derives from those affiliations." Molnlycke, 64 F. Supp. 2d at 450. Instead, the court "should look to the party's 'purposeful and extensive availment of the forum'" and should "consider the degree to which a corporation's contacts with a given forum are 'central to the conduct of its business.'" Id. (citing Provident Nat'l, 819 F.2d at 437-38). The "touchstone of general jurisdiction" is the "'quality and nature' of the defendant's contacts." Manning, 2010 U.S. Dist. LEXIS 1091, at *17 (citing Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 203 (3d Cir. 1998)). As one court explained, "the defendant [must] possess qualitative contacts with the forum that constitute 'the bread and butter of [the] defendant's daily business.'" In re: Chocolate, 641 F. Supp. 2d at 384 (citing Provident Nat'l, 819 F.2d at 438). Factors the court may consider are:

> [1] whether the defendant conducts daily business with
> Pennsylvania companies . . . [2] what percentage of defendant's
> total business was generated in Pennsylvania. . . [3] whether
> defendant maintained offices or paid taxes in Pennsylvania. . . [4]
> whether defendant availed itself of Pennsylvania resources in an
> extensive manner as a way of furthering its business. . . and [5]
> whether defendant made significant direct sales in Pennsylvania,
> solicited business regularly in Pennsylvania, and advertised in a
> manner *specifically targeted* to reach the Pennsylvania market.

Corporate Aviation Concepts, Inc. v. Multiservice Aviation Corp., 2003 U.S. Dist. LEXIS 21108, *9-10 (E.D. Pa. 2003) (emphasis added; internal citations and quotation marks omitted).

## D. Analysis of Defendant's Contacts

Defendant avers it does not have an office, distribution center, employees or any other physical presence in the Eastern District of Pennsylvania, (Doc. No. 4, Ex. 1, Declaration of

Diane L. Williams).  Plaintiff does not contest this representation.  Plaintiff asserts, however, that

Defendant is subject to general jurisdiction in the EDPA because: 1) it sells its products in the

EDPA, an activity that constitutes the "bread and butter" of its business; 2) it has contact with

distributors in the district; 3) it advertises in the district; 4) it ships products to the district,[3] and

5) it has a website and makes internet sales to customers in the district.  Each of these claims will

be considered in turn.

1.  Product Sales

      Although the percentage of income a defendant derives from the forum should "not

necessarily" control in a general personal jurisdiction analysis, several courts in this district have

focused on such figures in their analysis.  In Simplicity, Inc. v. MTS Products, Inc., a

Pennsylvania wholesaler and distributor of children's furniture sued a California manufacturer

for breach of contract relating to the shipment and return of allegedly defective products.  2006

U.S. Dist. LEXIS 17626, *2 (E.D. Pa. 2006).  In Simplicity, the court rejected plaintiff's

assertion that MTS's direct sales into Pennsylvania, which amounted to less than 1.5% of its total

sales over five years, were sufficient to confer general jurisdiction, as "such a figure falls

---

[3] Plaintiff suggests Defendant is subject to general jurisdiction because its goods are shipped into the EDPA on a daily basis.  (Doc. No. 19, at 11).  Plaintiff relies on White-Evans Mfg. v. Elevator Sales and Service, 543 F. Supp. 398 (E.D. Pa. 1982), in support of this argument.  However, as Judge Juan Sanchez pointed out in Simplicity v. MTS Products, Inc., the defendant in White-Evans "conceded and did not dispute allegations its contacts with the forum were systematic, substantial and continuous, and it was these admissions which formed the basis of the court's conclusions."  2006 U.S. Dist. LEXIS 17626, at *19.  Furthermore, Judge Sanchez reasoned, "shipping alone should not automatically relegate a defendant's contacts to the personal jurisdiction threshold without considering whether the shipments were extensive and pervasive enough to meet the continuous and systematic requirement."  Id. at *20.  In the instant case, Defendant's shipment of goods alone to the EDPA is not a sufficient basis for general jurisdiction in this district.

substantially below the 'continuous and systematic' contacts required." Id. at *14-15.  The court

further noted that other courts "have found similarly small percentages of sales into this forum

insubstantial for general jurisdiction purposes." Id. at *15 (citing, e.g., Modern Mailers, Inc. v.

Johnson & Quin, Inc., 844 F. Supp. 1048, 1054 (E.D. Pa. 1994) (defendant's sales of less than

0.5% to Pennsylvania deemed not substantial); Romann v. Geissenberger Manuf. Corp., 865 F.

Supp. 255, 261 (E.D. Pa. 1994) (same as to 2-4% of sales); Allied Leather Corp. v. Altama Delta

Corp., 785 F Supp. 494, 499-500 (M.D. Pa. 1992) (same as to 1% of sales)).

Plaintiff points to the seminal case of Provident Nat. Bank v. California Fed. Sav. & Loan

Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (hereinafter "Provident Nat'l"), in which the Third

Circuit held that general jurisdiction over the defendant existed in Pennsylvania, despite the

small quantity of business defendant performed in the state, because the contacts defendant had

with the forum were daily, continuous and part of the "bread and butter" of defendant's

business.[4]  Plaintiff asserts this case is analogous, in that selling heaters is the "bread and butter"

of Defendant's business, and that Defendant engages in that activity in Pennsylvania on a daily

basis through its direct phone and internet sales, its distributors, and through its regular

advertising and direct mailing campaigns.

Although the sale of its products are the "bread and butter" of Defendant's business, this

case is different from Provident Nat'l because Defendant's sale and advertisement of products in

the EDPA are not "central to the conduct of its business."  Provident Nat'l, 819 F.2d at 438.  As

---

[4]Defendant in Provident Nat'l was a California bank with no office and only a small
number of customers in Pennsylvania.  819 F.2d at 436.  Defendant, however, maintained an
account with a Pennsylvania bank through which its customers' checks cleared and to which
defendant wired daily transfers of funds to satisfy the checks cleared.  Id.

the court in the <u>Molnlycke Health Care AB</u> case, <u>supra</u>, explained:

> [Plaintiff] correctly asserts that even a small percentage of income deriving from a particular state may be sufficient to impose general jurisdiction, but the cases so holding focus on the degree to which the business in question is essential to the defendant.  In this case, there is no indication that Pennsylvania is an essential part of the conduct of [defendant's] business. . . Here, the court cannot find that [defendant's] product sales in Pennsylvania are either as systematic or as central to its business as the bank's interactions with Pennsylvania were.

64 F. Supp. 2d at 452.  Likewise, the court in <u>Brown</u>, <u>supra</u>, reasoned: "The small number of Pennsylvania sales through [defendant's website] do not represent the continuous or purposeful contacts required for general jurisdiction, nor do the sales constitute a central part of [defendant's] business."  2002 U.S. Dist. LEXIS 12294, at *25.  The court in <u>Manning</u> also reasoned:

> Although [defendant's] contacts with the Eastern District for the most part relate to its primary business of performing executive placement services, its level of activity in the district remains too insubstantial to constitute continuous and systematic contacts.  Courts addressing similar levels of contacts, even where those limited contacts relate to the central aspect of defendant's business, have found no basis for general jurisdiction.

2010 U.S. Dist. LEXIS 1091, at *23.

Here, Defendant shipped $13,415,726.27 worth of merchandise to customers in the EDPA over the last three years, representing 1.7% of its total sales.  Although Defendant advertised its products on the internet, television, radio and in print media on stations and in publications available in the EDPA, it spent only $750,000, or 2.4% of its print and 3.7% of its television advertising expenditures, in the EDPA over the last three years.  Since EDPA sales

comprise a small percentage of Defendant's total sales, and since Defendant spends a small percentage of its advertising dollars on advertising mediums targeting EDPA, it is clear that Defendant's contacts with the EDPA are not central to the conduct of its business. Rather, as will be discussed further, Defendant's contacts with the EDPA are more properly characterized as part of national sales practices and advertising campaigns that happen to reach the EDPA but are not specifically targeted at it. Accordingly, Defendant's sales and its associated advertising expenditures noted infra do not give rise to general jurisdiction in the EDPA.

## 2. Contacts with Distributors

Plaintiff asserts that Defendant's use of certified distributors constitutes continuous and systematic activity in the forum. (Doc. No. 19, at 9-10). In support of this argument, Plaintiff relies on Corporate Aviation Concepts, Inc. v. Multiservice Aviation Corp., in which a defendant credit card company had established a relationship with suppliers of goods and services to airlines so that the suppliers would accept defendant's credit as payment for a purchase made by a holder of defendant's credit card. 2003 U.S. Dist. LEXIS 21108, at *3-4. At the end of each business day, the suppliers would submit a bill to defendant of the credit charges of defendant's customers. Id. at *4. Defendant would then transfer funds equal to the purchase amount to the suppliers. Id. The court held that this conduct was a "continuous and central part of [defendant's] business," and constituted "the type of continuous and systematic contacts which give rise to general personal jurisdiction." Id. at *12-13 (internal citations and quotation marks omitted).

Here, Plaintiff has submitted evidence that Defendant has authorized certain retailers in

the EDPA to sell Defendant's products.  However, Plaintiff has not submitted evidence that

Defendant conducts its business through the distributors in a central, continuous and systematic

manner as was the case in Corporate Aviation Concepts and Provident Nat'l, supra.  Unlike the

defendants in Corporate Aviation Concepts and Provident Nat'l, Defendant here does not depend

upon its relationship with distributors to sell its products to consumers in the EDPA: Defendant

is also able to sell its products to EDPA customers via the internet and its 800 numbers.  Thus,

Defendant's relationship with its distributors is not central to its ability to conduct business with

customers in the EDPA.

　　　The instant case is more closely analogous to the facts in Simplicity, where the defendant

sold its products to "Mom and Pop" retailers in the forum, amounting to less than 1.5% of its

total sales over two years.  2006 U.S. Dist. LEXIS 17626, at **14-15.  The court in Simplicity

found that these relationships with retailers did not amount to continuous and systematic contacts

sufficient to confer general personal jurisdiction.  Id. at *15, 20.[5]

　　　Indeed, Defendant has no information on the gross dollar amount of sales made in the

EDPA through distributors located in the district.  (Doc. No. 19-A, at 12).  Moreover, upon

review of the limited information in the parties' jurisdictional discovery, it appears Defendant is

not a party to the sale made by the distributor to the customer.  (Doc. No. 19-B, at 4 (In response

to Plaintiff's statement, "You have certified distributors of your products who operate retail

---

[5]Furthermore, the defendant in Simplicity used commissioned agents to solicit business in
the forum but was still held to lack sufficient contacts with the forum to confer general
jurisdiction.  2006 U.S. Dist. LEXIS 17626, *20-21.  The court reasoned that because none of the
agents were assigned exclusively to Pennsylvania, their activities within the forum were
insufficient to create general personal jurisdiction.  Id.

outlets in the E.D. of Pa., Defendant "admitted" the statement, but noted, "Distributors are independent – they buy from us at a reduced price then resell."))  This scenario is in stark contrast to the facts in <u>Corporate Aviation Concepts</u> and <u>Provident Nat'l</u>, <u>supra</u>, where the defendants' relationship with Pennsylvania suppliers and a Pennsylvania bank were critical to enable defendants to conduct business in the state.  Based on the limited information presented by Plaintiff, it appears Defendant's relationship with distributors is not central to the conduct of its business in the EDPA, and the relationship does not rise to the level of purposeful, continuous and systematic contacts necessary to permit the exercise of general personal jurisdiction.

### 3.  Advertising Activities

Next, Plaintiff asserts that Defendant's advertising activities in the EDPA – its television and radio broadcasts, print media advertisements, and direct mailings – subject it to general personal jurisdiction in the district.  However, "Courts in this judicial district have consistently held that advertisements and solicitations, including direct mailings and voucher offers, are not, by themselves, substantial enough to meet the high standard for exercise of personal jurisdiction."  <u>Davis</u>, 2007 U.S. Dist. LEXIS 94381, at *15 (citing <u>Feldman v. Bally's Park Place Inc.</u>, 2006 U.S. Dist. LEXIS 37172, *11-12 (E.D. Pa. 2006) (listing cases)).  For advertising to give rise to general jurisdiction, it must be specifically targeted at the forum.  <u>Molnlycke</u>, 64 F. Supp. 2d at 452; <u>Simplicity</u>, 2006 U.S. Dist. LEXIS 17626, at *23.  "Courts have only exercised general jurisdiction when the defendant itself engaged in extensive local advertising, specifically calculated to attract in-state residents."  <u>Manning</u>, 2010 U.S. Dist. LEXIS 1091, at **18-19 (internal citation and quotation marks omitted).  "An advertising or other business campaign aimed at selling a particular item. . . cannot be deemed to be purposefully directed at

Pennsylvania even if some Pennsylvania residents respond to the campaign." Molnlycke, 64 F.

Supp. 2d at 452.

Here, Defendant has committed only a very small portion of its advertising budget – less

than 4% – to media that specifically target the EDPA. A review of Defendant's print media

advertising list (Doc. No. 19-A, at 21) reveals a list almost entirely of national publications, with

only one regional publication. Defendant has advertised in fifteen local newspapers, but no

evidence was presented indicating whether those advertisements were part of a national

advertising campaign, or whether they were part of a unique campaign specifically targeting the

EDPA. Likewise, there is no indication Defendant's direct mailing practices, radio advertising,

and even the infomercial which aired on a local channel in the EDPA were anything more than

components of a national advertising campaign. As the Molnlycke court reasoned, "Plaintiff has

made no showing that defendant's [ad campaign] *targeted* [the EDPA]." 64 F. Supp. 2d at 452

(emphasis added). Accordingly, Defendant's advertising activities in the EDPA do not give rise

to general jurisdiction.

4. Defendant's Website[6]

Finally, Plaintiff asserts that Defendant's website and its sale of products through its site

to consumers in the EDPA subject it to general jurisdiction in the EDPA. In Zippo

---

[6] Plaintiff does not devote a separate argument to Defendant's 800-numbers as a basis for general personal jurisdiction. The court in Davis, supra, considered a defendant whose contacts with the forum included 800-numbers. As the court reasoned, "providing a toll-free phone number without more specific targeting of the forum state is insufficient for general personal jurisdiction." 2002 U.S. Dist. LEXIS 12294, at *27. Here, no evidence has been presented to suggest that Defendant's 800-numbers in any way target the EDPA. Accordingly, Defendant's 800 numbers do not confer general personal jurisdiction over Defendant.

Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 2007), the court

articulated a sliding scale for analyzing internet contacts in a specific jurisdiction context.  The

Zippo sliding scale was subsequently adopted by the Third Circuit in resolving specific and

general jurisdiction issues.  Toys "R" Us, Inc., 318 F.3d at 452; Spuglio v. Cabaret Lounge, 344

Fed. Appx. 724, 726 (3d Cir. 2009).  When a court considers whether a website can confer

personal jurisdiction, under Zippo:

> [T]he likelihood that personal jurisdiction can be constitutionally
> exercised is directly proportionate to the nature and quality of
> commercial activity that an entity conducts over the Internet.  This
> sliding scale is consistent with well developed personal jurisdiction
> principles.  At one end of the spectrum are situations where a
> defendant clearly does business over the Internet.  If the defendant
> enters into contracts with residents of a foreign jurisdiction that
> involve the knowing and repeated transmission of computer files
> over the Internet, personal jurisdiction is proper. . . At the opposite
> end are situations where a defendant has simply posted information
> on an Internet Web site which is accessible to users in foreign
> jurisdictions.  A passive website that does little more than make
> information available to those who are interested in it is not
> grounds for the exercise of personal jurisdiction. . . The middle
> ground is occupied by interactive Web sites where a user can
> exchange information with the host computer.  In these cases, the
> exercise of jurisdiction is determined by examining the level of
> interactivity and commercial nature of the exchange of information
> that occurs on the website.

952 F. Supp. at 1124.

Although the court in Zippo suggests that use of a website "where a defendant clearly

does business over the Internet," will confer personal jurisdiction, it is important to note that

Zippo was a specific jurisdiction case[7] and that advancements in technology have affected courts'

---

[7]As the court in Molnlycke observed: "[T]he court cannot help but noticing [*sic*] that
most of the cases premising jurisdiction on internet activity have ruled on the basis of specific

-17-

application of the "sliding scale." Thus, in <u>Brown</u>, the court found that defendant's website – through which consumers could purchase defendant's products – was not sufficient to confer general jurisdiction because, "the small number of Pennsylvania sales[8] through [defendant's website] do not represent the continuous or purposeful contacts required for general jurisdiction, nor do the sales constitute a central part of [defendant's] business." 2002 U.S. Dist. LEXIS 12294, at *25. The court reasoned: "Allowing the mere presence of a website along with a toll-free number accessible from a particular state to constitute general personal jurisdiction in that state would result in an end-run around the Constitution." <u>Id</u>. at 28.

Courts have recently placed particular emphasis on the need for a website to specifically target a forum in order for it to serve as a basis for general jurisdiction. <u>Davis</u>, 2007 U.S. Dist. LEXIS 94381, at *18. In <u>Molnlycke</u>, the court reasoned that a website that is generally accessible and through which orders can be placed is analogous to an advertising campaign. 64 F. Supp. 2d at 452. The court reasoned that Third Circuit appellate and district court decisions,

> suggest that an advertising or other business campaign aimed at selling a particular item. . . cannot be deemed to be purposefully directed at Pennsylvania even if some Pennsylvania residents respond to that campaign. . . The court believes that [defendant's] websites are akin to such a general advertising campaign: while the websites are available in every state, they are not necessarily targeted towards every state. Plaintiff has made no showing that defendant's websites *targeted* Pennsylvania.

---

jurisdiction. . . This is relevant because . . . general jurisdiction is much more difficult to establish than is specific. . . cases finding general jurisdiction have included very extensive contacts." 64 F. Supp. 2d at 452, n.3.

[8]Orders made from Pennsylvania accounted for 3.7% of total orders in one year. 2002 U.S. Dist. LEXIS 12294, at *20.

Id. (emphasis added).  See Manning, 2010 U.S. Dist. LEXIS 1091, at *18-19 ("this online representation in and of itself does not provide a basis for general jurisdiction.  Courts have only exercised general jurisdiction when the defendant itself engaged in extensive *local* advertising, *specifically calculated* to attract in-state residents." (emphasis added; internal citation and quotation marks omitted)).  The court further reasoned: "To hold that the possibility of ordering products from a website establishes general jurisdiction would effectively hold that any corporation with such a website is subject to general jurisdiction in every state.  The court is not willing to take such a step."  Id. at 451.

Here, Plaintiff has proffered no evidence indicating that Defendant's website in any way targets the EDPA.  The fact that 0.19% of Defendant's sales in the EDPA are made through the internet and that the EDPA represents only 1.7% of Defendant's national sales, (Doc. No. 19-A, at 6, 10), hardly supports the claim of Plaintiff that Defendant's website targets the EDPA.  Rather, as in Molnlycke, supra: "while the [Defendant's] websites are available in every state, they are not necessarily targeted towards every state.  Plaintiff has made no showing that [D]efendant's websites target [the EDPA]."  64 F. Supp. 2d 448.  Accordingly, Defendant's website does not give rise to general jurisdiction in the EDPA.

Defendant's contacts with the EDPA are not sufficiently continuous and systematic to give rise to general jurisdiction over Defendant in this district.  Accordingly, Defendant does not "reside" in the EDPA, and the EDPA is not a proper venue under § 1391(a)(1).

**E.  Transfer**

Because venue in this district is improper, 28 U.S.C. § 1406(a) applies.  Section 1406(a)

provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss or, if it be in the interest of justice, transfer such case to any district, or division in which it could have been brought." Section 1406(a) therefore "enables the court to correct an erroneous venue choice without resorting to the harsh remedy of dismissal." Manning, 2010 U.S. Dist. LEXIS 1091, at *38 (internal citation and quotation marks omitted). Because Defendant concedes that the Middle District of Pennsylvania has specific jurisdiction and venue over this action (Doc. No. 19-A, at 16), the Court concludes that it is in the interest of justice to transfer the action to the Middle District of Pennsylvania.

## IV. CONCLUSION

In sum, the Eastern District of Pennsylvania is not a proper venue for the instant action because Defendant's contacts with the EDPA are not sufficiently continuous and systematic to give rise to general jurisdiction in this district. Defendant's Motion to Dismiss the Complaint Due to Improper Venue or, in the Alternative, to Transfer Venue to the United States District Court for the Middle District of Pennsylvania (Doc. No. 4) will be granted in part and denied in part. The Complaint will not be dismissed, but instead the case will be transferred to the Middle District of Pennsylvania where venue is proper. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EARL HENNING, : CIVIL ACTION
:
       Plaintiff, : NO. 09-4282
    v. :
:
SUAREZ CORPORATION INDUSTRIES, :
INC. (Improperly pled as BIOTEC :
RESEARCH) :
:
       Defendant. :

## **ORDER**

AND NOW, this 4th day of May, 2010, upon consideration of Defendant's Motion to Dismiss

the Complaint Due to Improper Venue or, in the Alternative, to Transfer Venue to the United

States District Court for the Middle District of Pennsylvania (Doc. No. 4), Plaintiff's Brief

Contra Defendant's Motion to Dismiss or in the Alternative to Transfer Venue (Doc. No. 6),

Defendant's Reply Brief in Further Support of Motion (Doc. No. 7) and Exhibits (Doc. No. 8 and

9), Plaintiff's Supplemental Brief Contra Defendant Suarez Corporation's Motion to

Dismiss/Transfer Venue on March 1, 2010 (Doc. No. 19), and Defendant's Supplemental Brief in

Further Support of Motion (Doc. No. 20) and Exhibits (Doc. No. 21 & 22), it is hereby

ORDERED that Defendant's Motion is GRANTED IN PART and DENIED IN PART  as

follows:

      1.      Defendant's Motion to Transfer for Lack of Venue is GRANTED;

      2.      Defendant's Motion to Dismiss for Lack of Venue is DENIED;

3.      This case shall be TRANSFERRED to the United States District Court for the

        Middle District of Pennsylvania and the Clerk of Court is Ordered to make the

        transfer.


                                    BY THE COURT:


                                     /s/ Joel H. Slomsky, J.
                                    Joel H. Slomsky, J.